

ENTERED
05/11/2011

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

|  |  |  |
|---|---|---|
| IN RE | ) | |
| | ) | |
| GERRY W. MILLS and | ) | CASE NO. 10-80766-G3-13 |
| CINDY L. MILLS, | ) | |
| | ) | |
| Debtors, | ) | |
| | ) | |

## MEMORANDUM OPINION

The court has held an evidentiary hearing on the "Trustee's Objection to Debtors' Claimed Exemptions" (Docket No. 20).  The following are the Findings of Fact and Conclusions of Law of the court.  A separate Judgment will be entered overruling the objection.  To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such.  To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

## Findings of Fact

Gerry W. Mills and Cindy L. Mills ("Debtors") filed a voluntary petition under Chapter 13 of the Bankruptcy Code on December 30, 2010.[1]  William E. Heitkamp ("Trustee") is the Chapter 13 Trustee.  The meeting of creditors was held on

---

[1]At the instant hearing, Gerry Mills testified.  References to "Mills" in this opinion, not otherwise qualified, refer to Gerry Mills.

February 10, 2011.  The instant objection was filed on February 15, 2011.

Mills testified at the hearing on the instant motion that, during 1981, he moved on to five acres of real property located in Pearland, Texas, owned by the mother of his wife-to-be, Cindy Mills.  In 1986, Gerry Mills and Cindy Mills were married.  In approximately 2000, Cindy Mills' mother conveyed an interest in the property to Gerry Mills.  In approximately 2005, Cindy Mills' mother died.

Mills testified that, after Cindy Mills' mother died, he and Cindy Mills lived in a house on the property.  He testified that, at that time, in addition to the main house, the property had a small "out-building" and a swimming pool.

Mills testified that, prior to July, 2009, he was employed by a general contractor.  He testified that, in July, 2009, he lost his job.  He has been unemployed since July, 2009. He testified that he receives unemployment compensation of $1,764 per month.  He testified that Cindy Mills was unemployed.  He testified that, since the petition date in the instant Chapter 13 case, Cindy Mills has become employed, and now earns $330 per month teaching piano lessons.

The court takes judicial notice that in September, 2008, Hurricane Ike passed over a large portion of southeast Texas.  Mills testified that Hurricane Ike caused extensive

damage to the main house.  He testified that the roof was destroyed, and, after rain got into the house, mold developed. He testified that there was electrical damage as well.

Mills testified that the City of Pearland determined that the main house was a safety hazard, and ordered Debtors to demolish and remove the main house.

Mills testified that Debtors (who were both then unemployed) did not have sufficient funds to pay for demolition of the main house.  He testified that Debtors have patched the roof of the out-building, and are living in it.  He testified that the out-building presently has a kitchen, two bedrooms, a living room, and a bathroom.

Mills testified that, in order to be able to comply with the City's demolition order, Debtors sold three of the five acres to Donald S. Long, the owner of adjoining property.  He testified that Debtors had no opportunity to sell the three acres to another buyer, because the three acres sold were landlocked. He testified that Debtors would have been required to sell the entirety of the land, including the portion on which they reside, if Long had not bought the three acres.

Mills testified that Debtors received the sale proceeds during September, 2010.  He testified that Debtors received $25,000 cash, and a note for $50,000, for sale of the property. The note is payable in three annual installments, due in

September of 2011, 2012, and 2013.  (Debtor's Exhibit 1).  The
note is secured by a deed of trust covering the three acres, and
was filed in the real property records of Brazoria County, Texas
on September 15, 2010.  (Debtor's Exhibit 2).

Mills testified that Debtors used the $25,000 cash to
pay for demolition and cleanup of the the main house and the
swimming pool, and to bring in 100 loads of topsoil to level the
property.

Debtors scheduled the note as exempt, under Section
41.001 and 41.002 of the Texas Property Code.  Trustee objects to
the exemption, on grounds the sale of the three acres constitutes
an abandonment of Debtors' homestead claim to the three acres,
and exemption of the sale proceeds expired six months after the
date the sale occurred.

### Conclusions of Law

Under Section 522(b)(1) of the Bankruptcy Code, an
individual debtor may exempt the property listed in Section
522(b)(2) or the property listed in Section 522(b)(3).
11 U.S.C. § 522(b)(1).  Under Section 522(b)(3), with exceptions
not pertinent to the instant case, the debtor may exempt property
that is exempt under Texas law.

Under Bankruptcy Rule 4003(c), the objecting party has
the burden of proving that the exemptions are not properly

claimed.  After hearing on notice, the court shall determine the

issues presented by the objections.

Trustee bases the instant objection to exemptions on

Section 41.001(c) of the Texas Property Code.  That section

provides:

> The homestead claimant's proceeds of a sale of a
> homestead are not subject to seizure for a creditor's
> claim for six months after the date of sale.

Tex. Prop. Code § 41.001(c).

Where a debtor has sold the entirety of a homestead

prior to the filing of a bankruptcy petition, and failed to

invest the proceeds in another homestead, Section 41.001(c)

operates to eliminate the exemption after six months.  In re

Zibman, 268 F.3d 298 (5th Cir. 2001).

However, where the debtor sells a portion of the

homestead property, Section 41.001(c) does not operate to

eliminate the exemption.  In re Bading, 376 B.R. 143 (Bankr. W.D.

Tex. 2007).  In Bading, a judgment lien creditor refused to

release an otherwise-unenforceable lien, thus creating a cloud on

title to Debtor's homestead (which consisted of two contiguous

lots).  The judgment lien creditor then released the lien as to

one lot, but refused to release the lien as to the other lot.

The debtor, who had found a buyer for the whole of the homestead,

closed the sale as to the portion on which the judgment creditor

had released its lien, and, after filing a Chapter 13 case,

sought avoidance of the judgment lien as to the other portion.

The judgment creditor took the position that, six months after

the sale of the first portion, the debtor's proceeds were no

longer exempt, and were subject to the judgment lien.  The

Bankruptcy Court rejected the judgment creditor's argument,

stating:

> On the one hand, she could have reinvested the proceeds
> from the partial sale of only the first tract of land
> in a new homestead, but risk promptly losing her
> homestead claim to the second tract under Texas' rules
> relating to abandonment. See England v. FDIC (In re
> England), 975 F.2d 1168, 1175 (5th Cir. 1992)
> ("[A]bandonment by the acquisition of another homestead
> is one way a claimant forfeits his or her rights to
> exempt sale proceeds of the former homestead."); In re
> Evans, 135 B.R. 261, 264 (Bankr. S.D. Tex. 1991) ("Due
> to the abandonment of his previous homestead and his
> claim of exemption for his current homestead, the
> debtor may not impress upon the remaining proceeds from
> the sale of his previous homestead any type of
> homestead character.").  Alternatively, the Debtor
> could have waited for the cloud on the title on her
> unsold tract to be cleared so that the balance of her
> homestead could be sold, but then risk losing the
> exemption on the first tranche of proceeds if that
> process (and the sale and reinvestment process) took
> longer than six months...[the creditor's] construction
> also fights with the time-honored principle in Texas
> that its homestead laws are to be construed liberally,
> so as to further the intent expressed in the Texas
> Constitution that the homestead be protected and the
> debtor not be left without a home.  See Whiteman v.
> Burkey, 115 Tex. 400, 282 S.W. 788, 789 (1926); Woods
> v. Alvarado State Bank, 118 Tex. 586, 19 S.W.2d 35,
> 35-36 (1929); Wallace v. First Nat. Bank, 120 Tex. 92,
> 35 S.W.2d 1036, 1040 (1931).

In re Bading, 376 B.R., at 149-150.

In Bading, the Bankruptcy Court held that the six month

exemption period for sale proceeds under Section 41.001(c)

commenced when the sale of the second tract was consummated, as a matter of law, and extended until six months after that date.  <u>In re Bading</u>, 376 B.R., at 155.

The instant case is an unusual fact situation, and the court's holding is limited to the narrow situation presented.  In the instant case, Debtors were forced to sell a portion of their homestead, in order to comply with an order of the city to eliminate a safety hazard.  The sale of a portion of the homestead was not a voluntary alienation of the entire homestead, and was not an arms-length transaction.  The transaction was not complete on the petition date, and remains incomplete.[2]  If the note was required to be turned over to creditors, it would deprive Debtors of the opportunity to rebuild a home on the homestead property, and either relegate them to a permanent subsistence in their out-building, or require them to sell the entirety of the homestead.  The court concludes that, in the instant case, the six month period under Section 41.001(c) of the Texas Property Code for reinvesting the proceeds of sale commences upon receipt of each of the installments due under the note.  Thus, there are no proceeds as to which Section 41.001(c)

---

[2]The court notes that Debtors may have an opportunity to exercise their rights under the deed of trust, and regain the portion of the homestead on which their home was formerly located.

could have operated as yet.  The court concludes that the instant objection to exemptions should be overruled.

Based on the foregoing, a separate Judgment will be entered overruling the "Trustee's Objection to Debtors' Claimed Exemptions" (Docket No. 20).

Signed at Houston, Texas on May 11, 2011.


_____
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE